AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

MAY 1 6 2017

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| Real Property, Improvements and Appurtenances | )    Case No.   1:17SW252 |
| known as 8901 St. Ives Place, | ) |
| Wilmington, North Carolina | ) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Eastern_____ District of _____North Carolina_____ is subject to forfeiture to the United States of America under ___18 USC___ U.S.C. § ___981___ *(describe the property)*:

Real property, improvements and appurtenances known as 8901 St. Ives Place, Wilmington, North Carolina (New Hanover County), and described as all of Lot 151 of Porters Neck Plantation, Phase III, Section 1, recorded in Map Book 34, Page 33, of the New Hanover County Registry. Being the same property conveyed by deed to Buffy A. Frank and recorded on 06/23/2016, in Book RB 5980, Pages 971-975, Instrument No. 2016019354.  Parcel ID No. R02920-003-022-000

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.

*Applicant's signature*

Reviewed by AUSA/SAUSA:

    AUSA Karen L. Taylor

Michelle L. Rankin, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   ___05/16/2017___

/s/

John F. Anderson
United States Magistrate Judge

*Judge's signature*

John F. Anderson, United States Magistrate Judge

City and state:  ___Alexandria, Virignia___

*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

MAY 1 6 2017

### Alexandria Division

| | | |
|---|---|---|
| IN THE MATTER OF THE SEIZURE OF: | ) | |
| | ) | |
| Real Property, Improvements and | ) | 1:17SW252 |
| Appurtenances Known as | ) | |
| 8901 St. Ives Place, Wilmington, North Carolina | ) | |

### AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Michelle L. Rankin, being duly sworn, hereby depose and state under oath that the following is true:

### AFFIANT'S EXPERIENCE

1.      I am a Special Agent employed by the Federal Bureau of Investigation (FBI). I have been so employed since 1999. Since 2010, I have been assigned to the Asset Forfeiture/ Money Laundering Squad in the FBI's Washington, D.C., Field Office (Northern Virginia Resident Agency). My investigative assignments include investigating the asset forfeiture aspects of suspected violations of numerous federal statutes including but not limited to: federal anti-money laundering statutes (18 U.S.C. §§ 1956 and 1957), distribution of controlled substances (21 U.S.C. § 841), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and health care fraud (18 U.S.C. § 1347) violations. I have received training in Advanced Money Laundering Techniques and Complex Financial Manipulation.

2.      The information contained in this affidavit is based, in part, on my personal knowledge and observations during the course of this investigation, as well as information

1

provided to me by other law enforcement agents, and is based on a review of various documents and records. Additionally, this affidavit is based upon my training and experience as well as that of other law enforcement agents working with me in this investigation. The dates listed in the affidavit should be read as "on or about" dates. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of the information about which I, or collectively the other agents involved in this investigation, have knowledge.

## PURPOSE OF AFFIDAVIT

3.      Since in or around January 2017, the FBI Washington Field Office, has been investigating allegations that Jon Lawrence Frank (J FRANK), devised and intended to devise a scheme to defraud NCI Information Systems, Inc (NCI), a firm providing information technology and professional services to U.S. Government agents, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals and sounds in violation of Title 18, United States Code, Section 1343.

4.      The investigation has revealed that J FRANK, using his position as Controller of NCI, as well as his detailed knowledge of its systems and operations, systematically directed over $19 million in fraudulent payments from NCI's payroll account to his own personal financial accounts. Using his position at the company, J FRANK was able to personally authorize the fraudulent payments by directing that they be made from accounts he controlled, and from accounts that would not require him to secure any additional approvals. J FRANK also took affirmative steps to conceal the fraudulent transfers to avoid detection. J FRANK falsified documentation, including

2

bank account statements, to make the transactions appear legitimate and circumvent the company's controls. The falsified documents were intended to mislead the company and its employees and agents into incorrectly believing that the payments were made to an NCI vendor to pay employee health benefit expenses, rather than for J FRANK's own personal enrichment.   This affidavit supports an application for civil and criminal seizure warrants for the below-listed assets (Subject Assets) as traceable proceeds of the above violations. The United States does not seek to seize the real property at this time.  Rather, the purpose of the real property warrant requests is for the Court to make a probable cause determination that the real properties are subject to forfeiture and to authorize the filing of a copy of the seizure warrant and memorandum of *lis pendens* or similar document in the public land records for each property to give notice of the impending forfeiture of the property and thereby prevent its transfer or dissipation.

5.       The subject vehicles and funds may be seized and lis pendens filed on the subject real properties because there is probable cause to believe they were funded or purchased with proceeds of the above wire fraud; and are therefore subject to civil forfeiture pursuant to Title 18, United State Code, Sections 981(a)(1)(C) and/or Title 18, United States Code, Section 984; and subject to criminal forfeiture pursuant to Title 28, United States Code, Section 2461(c).

## ASSETS TO BE SEIZED

6.       This affidavit is in support of civil and criminal seizure warrants for the following Subject Property:

> (1)   Any and all funds up to $490,150.00, held in BB&T account no. 252237801, held in the name of Buffy Ann Frank.

> (2)   Any and all funds held in BB&T account no. 152580037, held in the name of Jon L. Frank

(3)     Any and all funds held in BB&T account no. 5205570596, held in the name of Crescent Moon at 24 N Front LLC

(4)     Real property located at 10870 Meadow Walk Lane, Bristow, Virginia; further described as Lot 8, the Meadows at Bristow; owned by Buffy Ann Frank

(5)     Real property located at 6702 Spearow Lane, Wilmington, North Carolina; further described as Lot 10, Phase 1, Section 1 of Murray Farms; owned by Buffy A. Frank

(6)     Real property located at 8901 St. Ives Place, Wilmington, North Carolina; further described as Lot 151 of Porters Neck Plantation, Phase III, Section 1; owned by Buffy A. Frank

(7)     2016 BMW X1 28XI with VIN: WBXHT3C35G5E49453, registered to Buffy Ann Frank

(8)     2013 Porsche Carrera with VIN: WP0AB2A96DS121567, registered to Buffy Ann Frank and Jon Lawrence Frank

(9)     2015 Bentley Continental GT with VIN: SCBFJ7ZA4FC050373, registered to Jon Lawrence Frank and Buffy Ann Frank

(10)   2014 Town & Country Wagon with VIN: 2C4RC1GG0ER133104, registered to Buffy Ann Frank

## PROBABLE CAUSE

7.      JON LAWRENCE FRANK (J FRANK), 47 years old, who is known to reside in Nokesville, Virginia, was Vice President and Controller for NCI Inc., an information technology and staffing services firm in Reston, Virginia.  J FRANK was employed by the company from March 2000 until January 2017.  As the Controller, J FRANK had access to the company's financial statements, general ledger, payroll, and bank accounts.

4

8.      In late 2016, NCI uncovered a discrepancy in its financial records.  In the wake of that finding, NCI commenced an internal review to ascertain the source of the discrepancy. According to a representative for NCI,  by the review's conclusion, it had uncovered account statements, e-mails, and other documentary evidence demonstrating  that the discrepancy had resulted from a series of improper payments that had been approved by J FRANK, and that were directed to a bank accounts bearing his name.  NCI's representatives met with J FRANK and his attorney and discussed his actions which had caused the transfer of fraudulent payments to his personal bank account.  During the meeting, J FRANK admitted that he had used his position at NCI to make unsubstantiated payments from its payroll account into his personal checking account of approximately $11 million over a period of multiple years, and that the majority of the stolen funds had been obtained by him in the preceding two to three years.

9.      In January 2017, Special Agents of the FBI interviewed a witness who attended the meeting with NCI Inc.'s representatives and J FRANK.   During the meeting, the witness heard J FRANK acknowledge he had been making unauthorized payroll transfers into his personal accounts for about ten years, and had used those funds to purchase real properties and vehicles.  Also during the meeting, J FRANK explained that he originally used his BB&T account but then switched to a PNC account and estimated he had transferred $11 million over those years.  In addition, the witness heard J FRANK describe the mechanics of his scheme to defraud the company.

## **SCHEME TO DEFRAUD**

10.     To facilitate the embezzlement, J FRANK prepared fraudulent payment requests using a template he obtained from an NCI vendor to create the false appearance that the improper bank transfers were legitimate payments. The vendor sent payment requests to NCI using a secure email system and J FRANK fraudulently recreated email payment requests that appeared to be sent from that system. J FRANK also altered certain bank account statements using Adobe software to disguise his fraudulent payments.

11.     As Controller of the Company, J FRANK had access to NCI's payroll system. J FRANK used this access to direct NCI's bank, which maintained NCI's payroll account, to carry out transfers of NCI funds in the amounts and to the accounts specified by J FRANK in the falsified reimbursement e-mail requests.

12.     A witness who attended the meeting between J FRANK and NCI representatives heard J FRANK explain how he used NCI's legacy payroll system for these fraudulent transfers which J FRANK accessed by calling SunTrust Bank to initiate the transfer of funds to his PNC Bank account. J FRANK described the legacy payroll system as a back up to the current main system if it was down for some reason and to make payments to certain employees. In addition to calling the bank to effectuate the transfer of funds from NCI's SunTrust Account to his personal bank account, J FRANK accessed NCI's SunTrust Bank payroll account statements online, downloaded the statements to his office computer, and altered them using Adobe software to obscure the true transactions to make it appear consistent with payments to the vendor. He then caused the altered bank statements to be entered into NCI's general ledger. When auditors questioned J FRANK about the transactions, he referred them to the altered documents. Taken together, statements by J FRANK, witness interviews, and documents

6

provided by NCI indicate J FRANK conducted each of these actions at the NCI offices in Reston, Virginia.

13.     Further, during the meeting with J FRANK and NCI's representatives the witness heard J FRANK offer to return some of the money to NCI Inc. by liquidating his assets which he believed would raise $7.5 million.

14.     I have reviewed NCI's Sun Trust Bank records that were provided to J FRANK during his meeting with NCI representatives. During the meeting, J FRANK reviewed records associated with two transactions and confirmed the records were part of his scheme to defraud NCI Inc. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $351,264.15, on October 3, 2016, from NCI's Sun Trust main payroll account xx7646 to his personal PNC Bank Account xx7539. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $359,997.32, on January 15, 2016, from NCI's Sun Trust xx7646 to his personal PNC xx7539. A Sun Trust Bank employee explained to investigating agents that the server location for such transactions is located in Georgia. A PNC Bank employee was contacted and advised that the mainframe associated with these transactions was located in Virginia, thereby causing the transfer of funds from NCI's account into his personal account by means of wire communication in interstate commerce.

## INCOME AND FINANCIAL TRACING

15.     In order to trace the proceeds into the ten assets for which your affiant is seeking seizure warrants, certain accounts and properties that acted merely as conduits are also detailed below. The assets for which this affidavit seeks seizure warrants are noted below with an asterisk (*) in the asset header. Other assets described below are assets that serve as conduits when tracing to the assets for which seizure warrants are sought.

16.      Your affiant has reviewed account records associated with J FRANK and his

wife, Buffy Ann Frank (B FRANK).  Based on a review of records provided by NCI and review

of the J FRANK's financial accounts from January 2010 through January or February 2017, your

affiant has identified over $19.4 million in fraudulent proceeds that were deposited directly into

three accounts held by J FRANK and/or joint accounts with B FRANK.  The fraudulent funds

represent the overwhelming majority of deposits into their accounts.  A portion of the fraudulent

proceeds were moved between multiple other accounts held by the FRANK's, and/or used to

purchase multiple real properties, multiple luxury automobiles which were traded-in for newer

models on a regular basis, and luxury personal items.  As outlined below, the transfer of

fraudulent proceeds from the three accounts directly receiving fraudulent proceeds into other

accounts held by the FRANKS (secondary accounts) also represents the majority of deposits into

these secondary accounts. This affidavit seeks warrants to seize three of these bank accounts,

four vehicles, and to file notices of *lis pendens* on three real properties.

17.      According to NCI, J FRANK received an annual salary of approximately

$180,000 to $200,000, and typically received annual bonuses of approximately $40,000.  Based

on a review of bank records, J FRANK received salary deposits of approximately $4,665 (2010)

increasing to approximately $5,500 (2016) per pay cycle which averaged two payments per

month.  J FRANK also appears to have received deposits of expense reimbursements (totaling

$44,990) and bonuses.

18.      B FRANK's sole source of legitimate income was approximately $1,500 per

month of social security disability.  On a loan application signed by B FRANK in June 2016, in

conjunction with the purchase of her current residence, she listed her employment from October

2000 to December 2015 as "housewife," and for the previous eight months as self-employed at

Crescent Moon at 24 North Front LLC (Crescent).   Under the income portion of the application, B FRANK lists her income as $4,680 per month from alimony/child support and $1,514 per month from Social Security/Disability.   She also claimed rental income of $1,875 per month from the condominium located at 24652 Byrne Meadow Square.   The review conducted of her bank records showed her disability and rental income consistent with her loan application.   As explained in further detail below, both the alimony payments and rental income from real property are sourced from fraudulent proceeds, and the amount of proceeds deposited into accounts held by B FRANK far exceeds alimony/child support payments claimed in her loan application.   A review of bank records from Crescent Moon shows that the business has not turned a profit since opening, and proceeds have been transferred into the Crescent Moon accounts.

19.       J FRANK and B FRANK have been legally separated since 2013.   J FRANK resides in Nokesville, Virginia; and B FRANK currently resides in Wilmington, North Carolina. J FRANK continues to financially support B FRANK by depositing or transferring fraudulent proceeds into accounts under the control of B FRANK.   Some of these transfers (primarily checks) have included notations in the memo section of the check referencing 'alimony' payments.

## FRAUD PROCEEDS FROM NCI

20.       Your affiant has reviewed financial records from NCI, and financial accounts associated with J FRANK for the period January 2010 through January 2017.   This review has revealed over $19.4 million spread over 136 deposits into J FRANK's personal accounts that cannot be accounted for as salary, bonuses, or reimbursement expenses.   Based on an interview with NCI's Chief Financial Officer, your affiant confirmed that these deposits are fraudulent

9

proceeds of the above-noted scheme to defraud.  The records reviewed showed these fraudulent

funds from NCI's account were deposited into three different accounts held solely or jointly by J

FRANK and/or B FRANK: BB&T xx9899, BB&T xx2514, and PNC xx7539.  Each of these

accounts is further described in detail below.

21.      Beginning in 2010, the number of fraudulent deposits into J FRANK's personal

account averaged two to three deposits per month.  The average amount of each deposit was

approximately $29,674.  By 2016, the frequency of the deposits into his personal account had

decreased, however the average amount of each transaction had increased significantly to

approximately $288,655 per deposit.  Below is a chart summarizing the total amount of

fraudulent proceeds deposited into J FRANK's accounts from 2010 through 2016:

| Year | Total fraud deposits | Deposit account(s) |
|------|----------------------|--------------------|
| 2010 | $ 1,038,614.41 | BB&T xx9899, BB&T xx2514 |
| 2011 | $ 2,074,017.17 | BB&T xx9899, BB&T xx2514 |
| 2012 | $ 2,256,624.33 | BB&T xx9899 |
| 2013 | $ 2,273,044.38 | BB&T xx9899, PNC xx7539 |
| 2014 | $ 3,284,944.93 | BB&T xx9899, PNC xx7539 |
| 2015 | $ 3,238,181.43 | BB&T xx9899, PNC xx7539 |
| 2016 | $ 5,286,922.74 | PNC XX7539 |
| Total: | $ 19,452,349.39 | |

### BB&T xx9899

22.      BB&T xx9899 is a joint checking account that was opened on October 17, 1994,

as account number xx4113.  With a bank merger, the account was converted to BB&T account

xx9899 on October 11, 2003.  The signatories on the account were listed as Jon L. Frank and

Buffy Ann Frank.  According to BB&T, this account was closed in approximately February,

2017, and the remaining funds were transferred to BB&T xx7801.  A review of BB&T xx9899

was conducted for the period January 6, 2010, through January 9, 2017. At the beginning of the review period, the balance on the account was $116,772.73.

23.     This account appears to have been used as the primary checking account for the FRANKS until their legal separation in 2013, and directly received fraudulent proceeds from NCI. The fraudulent proceeds were directly deposited into this account until approximately October 2010, when the proceeds were briefly redirected into BB&T xx2514. Beginning in approximately July 2011, the fraud proceeds resumed being deposited into BB&Txx9899 until approximately August 2013. After August 2013, further proceeds of the fraud scheme were then deposited into J FRANK's new account (PNC xx7539).

24.     Although the direct deposit of proceeds into BB&T xx9899 lapsed for ten months in 2010/2011, and transitioned to PNC xx7539, BB&T xx9899 continued to receive deposits of proceeds from these two accounts throughout the review period, the most recent of which was a $50,000 transaction from PNC xx7539 which cleared on January 9, 2017. The resulting balance on the account was $87,121.36.

25.     Over the approximate seven year review period, all deposits into this account totaled $10,483,376.98. This total includes J FRANK's salary and expenses totaling $647,639.80; social security disability income for B FRANK totaling $79,933.00; and $6,103,067.36 in fraudulent proceeds deposited directly from NCI's account. Many of the proceeds deposited into this account were transferred into other accounts held by the FRANKS, and/or used to purchase a variety of items including the purchase or construction of real property, purchase of luxury vehicles and customizations, purchase of luxury personal items, and significant credit card payments (over $2.6 million from this account during the review period).

26.     Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above. In summation, at least $8,716,301.82 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 83% of all deposits into this account. Purported legitimate salaries and expenses for J FRANK and B FRANK totaled $727,572.80, and represented only 7% of the total deposits into this account.

## PNC xx7539

27.     PNC xx7539 is an interest checking account opened on September 23, 2013. The sole signatory on the account is Jon Frank. A review of this account was conducted for the period September 23, 2013, through January 18, 2017. As this account was opened during the review period, the account balance began at zero. This account appears to be the primary checking account used by J FRANK after his legal separation from B FRANK in 2013. Beginning September 25, 2013, (two days after the account was opened) this account began directly receiving fraudulent proceeds from NCI. The most recent transaction involving proceeds was a deposit in the amount of $379,771.01 from NCI's account on January 10, 2017.

28.     Over the approximate three year four month review period, all deposits into this account totaled $14,254,148.29. This total includes J FRANK's salary and expenses totaling $354,998.56, and $12,595,677.80 in fraudulent proceeds deposited directly from NCI's account. Many of the proceeds deposited into this account were transferred into other accounts held by the FRANKS, and/or used to purchase a variety of items including the purchase or construction of real property, purchase of multiple luxury vehicles, furniture, purchase of luxury personal items and tailored clothing, and significant credit card payments (over $1.9 million from this account

12

during the review period). Some of the funds transferred to other accounts and investments were later re-deposited into this account are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above. In summation, at least $13,307,577.80 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 93% of all deposits into this account. Purported legitimate salary and expenses represented only 2% of the total deposits into this account.

## BB&T xx2514

29.    BB&T xx2514 is a savings account opened on June 7, 2007. The signatories on the account were listed as Jon L. Frank and Buffy A. Frank. According to BB&T, this account is now closed. A review of this account was conducted for the period January 14, 2010, through January 9, 2017. At the beginning of the review period, the balance on the account was $26,802.81. As noted above, this account directly received fraudulent proceeds from NCI from approximately October 2010 through July 2011, totaling $753,604.23. This account received transfers from BB&T x9899 on three occasions for a total of $58,000, the most recent of which was a transfer of $40,000 on October 7, 2016. In addition, this account received regular deposits from NCI (two to three times per month) of $100 consistent with the practice of allotting a portion of salary to savings. Additionally, there was one deposit from NCI for $21,448.62, which could be consistent with an employee bonus. Other deposits to this account included interest and some minor deposits from other accounts and sources.

30.    Withdrawals from this account included transfers to other accounts held by the FRANKS, credit card payments, and a customer withdrawal. The balance at the end of the review period was $7,001.81. In summation, total deposits into this account was $849,478.60.

Of that, at least $812,504 is traceable fraud proceeds and accounted for 96% of all deposits into this account.

### * BB&T xx7801

31.     BB&T xx7801 is a "Bright Banking" checking account that was opened on September 26, 2013. The sole signatory on the account is Buffy Ann Frank. As this account was opened during the review period, the account balance began at zero. According to BB&T, as of April 27, 2017, this account had a balance of approximately $46,000. This account appears to be the primary checking account used by B FRANK after her legal separation from J FRANK in 2013. This account received indirect proceeds from the above fraud scheme through accounts that received direct and/or indirect proceeds of the same scheme, and rental income from properties purchased with fraud proceeds. A review of this account was conducted for the period September 26, 2013, through January 18, 2017.

32.     Many of the proceeds deposited into this account were transferred into other accounts held by B FRANK or her businesses, and/or used to purchase a variety of items including the purchase and/or construction of real property, mortgage payments on her current residence, purchase of an/or transfers into her businesses Crescent Moon and Logistic Glamour, purchase of vehicles, purchase of art and personal items, and significant credit card payments (over $503,000 from this account during the review period). Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above.

33.     Over the approximate three year four month review period, all deposits into this account totaled $2,011,273.76. Of those deposits, a total of $73,270 in social security disability

was deposited into this account and represents only 4% of the total deposits into this account. Indirect proceeds deposited into this account include checks and transfers from BB&T xx9899, BB&T xx2514, and PNC xx7539 all of which, as noted above, were primarily funded from fraudulent proceeds. This account was also funded from BB&T xx0037 and BB&T xx5023 which, as noted below, were also primarily funded with fraud proceeds. In addition, this account received $70,115 in rental income from a property purchased with fraudulent proceeds. This property on Byrne Meadow Square is detailed further below.

34.     On October 10, 2013, within weeks of the account opening, $250,000 in funds from this account was transferred to a Raymond James account xx4121 held solely by Buffy Ann Frank. Prior to the October 10 transaction, this account received $277,266.36 in deposits from BB&T xx9899, BB&T xx2514, and PNC xx7539 – all of which have been outlined above as having been funded primarily by fraud proceeds. In 2014, a total of four deposits were made from this Raymond James account back into BB&T xx7801, totaling $262,952.06. This amount is included in the total deposits into this account.

35.     In summation, at least $1,911,341.33 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 95% of all deposits into this account. Within the past one year period, the following fraudulent proceeds have been deposited into this account:

| Cleared | Amount | Source |
|---|---|---|
| 5/27/2016 | $30,000.00 | PNC xx7539 |
| 6/2/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 6/2/2016 | $200,000.00 | PNC xx7539 |
| 6/2/2016 | $3,990.00 | PNC xx7539 |
| 7/5/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 8/2/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 9/6/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 10/4/2016 | $1,895.00 | Rent - Byrne Meadow Square |

15

| | | |
|---|---|---|
| 10/6/2016 | $69,000.00 | BB&T xx9899 |
| 11/1/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 12/2/2016 | $20,000.00 | BB&T xx2514 |
| 12/5/2016 | $1,895.00 | Rent - Byrne Meadow Square |
| 12/27/2016 | $10,000.00 | BB&T xx9899 |
| 12/30/2016 | $60,000.00 | PNC xx7539 |
| 1/5/2017 | $1,895.00 | Rent - Byrne Meadow Square |
| 1/13/2017 | $82,000.00 | BB&T xx9899 |
| **Total** | **$490,150.00** | |

36.    Based on the above, your affiant is seeking a seizure warrant for this account.

### * BB&T xx0037

37.    BB&T xx0037 is an Investors Deposit Account opened on April 28, 2007. The sole signatory on the account is Jon L. Frank. A review of this account was conducted for the period January 14, 2010, through January 9, 2017. At the beginning of the review period, the balance on the account was $200,729.30. According to BB&T, on April 27, 2017, this account had a balance of approximately $9,800. The source of deposits to this account were transfers from other BB&T accounts held by J FRANK and B FRANK, and interest earned from deposited balances.

38.    During the review period this account received deposits totaling $120,253.75. The only source of deposits into this account during the review period was transfers from other accounts primarily funded from fraudulent proceeds, and interest earned on this account from the funds on deposit. During that period, interest in the amount of $1,598.80 was accumulated in this account, and deposits consisted of transfers from the following accounts: BB&T xx7801 totaling $5,254.95, BB&T xx2514 totaling $36,500.00, and deposits from BB&T xx9899 totaling $76,900.00.

39.     Withdrawals from this account primarily consisted of transfers made to two accounts: BB&T xx7801 in the amount of $85,215.94 and BB&T xx9899 in the amount of $219,899.99. Payments totaling $5,386.91 were made to two credit card accounts, and bank fees charged to the account totaled $585.00.

40.     Based on the above, your affiant is seeking a seizure warrant for this account.

### * BB&T xx0596

41.     BB&T 0596 is a Business Value 200 checking account opened on or about August 13, 2015. This account is held in the name of Crescent Moon at 24 N Front LLC, and B FRANK is the sole signatory for this account. Bank Statements for this account were reviewed for the time period of August 13, 2015 through February 28, 2017. The opening balance for this account was a zero balance. According to BB&T, as of April 27, 2017, the account balance was approximately $15,000.

42.     The majority of the deposits to this account were from other accounts held by Jon and Buffy Frank which contained fraudulent proceeds. Over the approximately eighteen (18) months this account was analyzed, deposits to this account totaled $497,031.12. Of those total deposits, $359,000.00 were made from accounts containing fraudulent proceeds. As summary, 72.2% of the deposits to this account were made directly from accounts containing fraudulent proceeds of the scheme.

43.     The accounts from which deposits originated and aggregate amounts of those deposits are summarized as follows: BB&T xx9899 ($217,000), BB&T xx 7801 ($119,000), BB&T xx2514 ($13,000) and BB&T xx5169 ($10,000). Within the past one year period, $121,000.00 of fraudulent proceeds have been deposited into this account, detailed as follows:

| Cleared | Amount | Source |
|---------|--------|--------|
| 6/15/2016 | 38,000.00 | BB&T xx7801 |

| | | |
|---|---|---|
| 8/4/2016 | 20,000.00 | BB&T xx7801 |
| 9/9/2016 | 20,000.00 | BB&T xx7801 |
| 10/31/2016 | 20,000.00 | BB&T xx7801 |
| 1/3/2017 | 13,000.00 | BB&T xx2514 |
| 10/6/2016 | 10,000.00 | BB&T xx9899 |

**121,000.00**

44.    Based on the above, your affiant is seeking a seizure warrant for this account.

## BB&T xx5023

45.    BB&T xx5023 is a Business Value account held in the name of Logistic Glamour. This account was opened on December 11, 2013, and the sole signatory on this account is B FRANK, who is listed on the signature card as President of Logistic Glamour. As this account was opened during the review period, the account balance began at zero. A review of this account was conducted for the period December 11, 2013, through August 13, 2015 when the account was closed.

46.    This account was initially funded with a deposit of $50,000 from BB&T xx7801. Other deposits to this account included additional deposits from BB&T xx7801 and BB&T xx5169 totaling $16,826.27, and one visa credit balance deposit of $247.98. Of the total $67,074.24 in deposits to this account, a total of $50,356.50 was returned to BB&T xx7801, and $2,500 was transferred to BB&T xx9899. A total of $14,217.74 was used for various checks, credit card payments, and other expenses. This account was closed on August 13, 2015.

## BB&T xx5169

47.    BB&T xx5169 is an Investors Deposit Account held in the name of Buffy Ann Frank. This account was opened on November 1, 2013, and the sole signatory on the account is B FRANK. As this account was opened during the review period, the account balance began at zero.

18

48.     This account was reviewed from the time period of opening through January 18, 2017, approximately 15 months. Total deposits to this account during the review period totaled $115,101.54. During the review period, 100% of the deposits to this account came from accounts containing proceeds of fraudulent activity, or interest earned on the fraudulent funds. In summary, this account received deposits totaling $110,069.65 from BB&T xx7801, and $5,000.29 from BB&T xx2514. The only other deposits were interest payments totaling $31.60.

49.     During the time period of analysis, the withdrawals from this account totaled $95,896.17. The majority of withdrawals from this account consisted of transfers of funds to other accounts held by the FRANKs (separately or jointly): $50,000 was transferred to BB&T xx5023, $15,000 to BB&T xx9899, $10,000 to BB&T xx0596 and $14,479.65 to BB&T xx7801. In addition, $1,000 from this account was used as earnest money toward the purchase of real property at 6702 Spearow Lane, Wilmington, North Carolina, as outlined in further detail below.

### 24652 BYRNE MEADOW SQUARE, ALDIE, VIRGINIA

50.     24652 Byrne Meadow Square is a condominium located in Loudoun County, Virginia, within the Van Meter at Mercer Park Condominiums. According to the deed filed in Loudoun County, the property was purchased by Jon L. Frank and Buffy A. Frank on or about November 14, 2012. According to the HUD-1 for this sale, the contract sales price for this property was $269,735.00 with an earnest money deposit in the amount of $13,500. A review of financial records revealed a counter check made payable to cash from BB&T xx9899, signed by B FRANK and dated October 29, 2012, for $13,500. In the memo section of the withdrawal slip was handwritten, "certified check." This counter check was used to purchase Official Check # 5005078489, dated October 29, 2012, payable to "Van Meter at Mercer Park Condo LLC."

51.     On November 15, 2012, B FRANK signed another counter check from BB&T xx9899, payable to BB&T in the amount of $258,355.41. This counter check was used to purchase Official Check # 5005078510, made payable to Walker Title LLC, for the closing.

52.     On November 14, 2012, a deed was made between Van Metre at Mercer Park Condominiums, Inc. and Jon L. Frank and Buffy A. Frank. The deed was filed on November 16, 2012, in Loudoun County Circuit Court, Loudoun County, Virginia. The deed described the property as "Condominium Unit 4-104, Phase 4, Section 17, Mercer Park Condominium".

53.     A review of bank records revealed that rental income from this property is being deposited into accounts held by the FRANKS. From April 2013 through December 2013, rent proceeds were deposited into BB&T xx9899. From January 2014 through the end of the review period, rent proceeds were deposited into BB&T xx7801. A total of $85,206.57 in rental income has been identified.

## * 10870 MEADOW WALK LANE, BRISTOW, VA

54.     10870 Meadow Walk Lane is a single family residence located in Bristow, Virginia, that was purchased by J FRANK and B FRANK with a settlement date of October 31, 2007. According to the deed filed in Prince William County, Virginia, the purchase price for this property was $1,107,940.00. A deed of trust was filed by HSBC Mortgage (HSBC) in the amount of $886,300. Beginning on February 8, 2010 through March 7, 2013, a total of 37 payments were made from BB&T xx9899 to satisfy the HSBC Mortgage, totaling $1,037,784.98. HSBC filed a Certificate and affidavit of Satisfaction on May 23, 2013. In sum, the over $800,000 mortgage for this residence was paid off in less than six years.

55.     In addition to the mortgage payments, in January 2009, J FRANK contracted with the builder of this property, Sorensen Construction Corporation (Sorensen), to add an additional

garage to this property. The garage was paid for by five checks from the aforementioned BB&T xx9899, for a total of $50,845 paid as follows:

| Check Date | Amount | Memo |
|---|---|---|
| 1/20/2009 | $ 12,475.00 | 25% down payment |
| 3/24/2009 | $ 12,475.00 | 2nd payment |
| 3/31/2009 | $ 12,475.00 | 3rd pymt garage |
| 4/23/2009 | $ 12,475.00 | |
| 4/29/2009 | $ 945.00 | end balance |

56.     In September 2010, J FRANK again contracted with Sorensen to build an additional bay onto the detached garage that they had previously built. This addition was paid for with four checks from BB&T 9899, for a total of $35,800 and paid as follows:

| Check Date | Amount | Memo |
|---|---|---|
| 9/13/2010 | $ 8,950.00 | 25% down payment |
| 11/2/2010 | $ 8,950.00 | 2nd Installment |
| 11/9/2010 | $ 8,950.00 | 3rd draw |
| 1/3/2011 | $ 8,950.00 | Final draw on garage |

57.     On December 11, 2013, a Quit Claim deed was filed in Prince William County, Virginia, which was dated October 24, 2013, and conveyed all interest in this property to B FRANK for the consideration of one dollar and other good and valuable consideration. Based on the above, your affiant seeks a seizure warrant for this property as the property and additions were funded with the proceeds of wire fraud as outlined above.

## * 6702 SPEAROW LANE, WILMINGTON, NORTH CAROLINA

58.       6702 Spearow Lane is a single family residence that is located in New Hanover

County, North Carolina.  This property was purchased by B FRANK via cash purchase on or

about September 23, 2015.  According to the HUD-1 for this sale, the purchase price for the

property was $155,500.00.  Earnest money in the amount of $1,000 was paid by B FRANK with

a check from BB&T 5169 via check # 102 dated September 3, 2015, payable to Network Real

Estate.

59.       On or about September 22, 2015, a wire transfer was sent from BB&T 9899 to the

attorney handling the closing, Price & Williams, in the amount of $156,216.35.    A deed was

subsequently filed in New Hanover County, North Carolina, on September 23, 2015, showing

the owner of the property as Buffy A. Frank.

60.       This residence is not the primary residence of B FRANK.  Based on public source

research, it appears that B FRANK's niece and others currently reside at this property.  As noted

earlier in this affidavit, the BB&T accounts providing funding for the purchase of this residence

are primarily funded with fraudulent proceeds.  Based on the above, your affiant is seeking a

seizure warrant for this property.

## * 8901 ST. IVES PLACE, WILMINGTON, NORTH CAROLINA

61.       8901 St. Ives Place is a single family residence located in New Hanover County,

North Carolina.  This property was purchased by B FRANK on June 23, 2016, as her primary

residence.  According to the HUD-1 for this sale, the sale price of this property was

$780,000.00.  The property was purchased with an Earnest Money deposit of $10,000.00 via a

check from BB&T Bank xx7801 dated May 5, 2016, check number 1131.  Previous to the

closing date, a wire transfer from the same account was made by B FRANK to the law firm of Price & Williams, PA dated June 20, 2016, in the amount of $180,385.29.

62.     A mortgage was underwritten by Alpha Mortgage in the amount of $604,462.00. The current servicer of this mortgage is BB&T. According to records obtained from BB&T, over $18,000 in mortgage payments have been made toward this loan, all paid from BB&T xx7801. According to the deed filed subsequent to the above sale, the owner of the property is listed as "Buffy Frank, a married woman as her sole and separate property." The deed of trust filed subsequent to the sale shows the borrower as "Buffy Frank, a married woman as her sole and separate property and husband Jon Lawrence Frank."

63.     As noted earlier in this affidavit, BB&T xx7801 which provided funding for the purchase of this residence was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking a seizure warrant for this property.

### * 2016 BMW X1 28XI, VIN WBXHT3C35G5E49453

64.     According to records obtained from the North Carolina Department of Motor vehicles, this 2016 BMW X1 was purchased on or about March 26, 2016. The registered owner of this vehicle is Buffy Ann Frank at 712 Grey Squirrel Drive, Wilmington, North Carolina. Your affiant knows this address to be B FRANK's previous address before the purchase of her current residence in June 2016. It was purchased from BMW of Wilmington with a total purchase price of $53,386.79. Records obtained from BB&T show that this vehicle was purchased with check number 1124 from BB&T xx7801, payable to BMW of Wilmington, in the amount of $53,386.79. The memo section of the check bore a handwritten notation of "New Car for My Birthday."

65.     As noted earlier in this affidavit, BB&T xx7801, which funded the above vehicle purchase, was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking a seizure warrant for this vehicle.

### * 2013 PORSCHE 911 CARRERA, VIN WP0AB2A96DS121567

66.     According to records obtained from the Virginia Department of Motor Vehicles, this 2013 Porsche 911 Carrera was purchased on or about January 12, 2013. The registered owners of this vehicle are listed as Buffy Ann Frank and Jon Lawrence Frank. It was purchased from HBL Porsche of Tysons Corner (HBL) for the sales price of $168,637.04. Records obtained from HBL revealed that this purchase was made with a trade-in of a 2011 Porsche 911, and check number 7302, dated January 12, 2013, in the amount of $77,634.04, from BB&T xx9899, payable to Porsche Tysons, and signed by B FRANK. On the memo section of the check was handwritten, "my Porsche [smiley face emoji]."

67.     The sales documentation identified the trade-in vehicle as a 2011 Porsche 911, VIN: WP0AB2A96BS720062. According to records obtained from the Virginia Department of Motor Vehicles, this vehicle was purchased by J FRANK on June 24, 2010, from HBL. Bank records reviewed in this case show that also on June 24, 2010, J FRANK wrote and tendered check number 6630 in the amount of $119,246.68, from BB&T xx9899, to HBL. On the memo section of the check was handwritten, "911 4S."

68.     A Separation and Property Settlement Agreement was signed by J FRANK and B FRANK on October 3, 2013, and October 2, 2013 respectively. This agreement was filed with the deed for B FRANK's current residence on St. Ives Place. In the portion of the agreement outlining the division of assets, the agreement stated, "the 2013 Porsche 911, which is currently titled jointly in the Parties' names, and not encumbered by any debt, shall

24

be the Wife's sold and separate property.". As noted earlier in this affidavit, BB&T xx9899, which funded both of the above vehicle purchases, was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking a seizure warrant for this vehicle.

## * 2015 BENTLY CONTINENTAL GT, VIN SCBFJ7ZA4FC050373

69.      According to records obtained from the Virginia Department of Motor Vehicles, this 2015 Bentley Continental GT was purchased on or about June 9, 2015, from Aston Martin of Washington. The registered owners of this vehicle are listed as Jon Lawrence and Buffy Ann Frank, and the sale price for this vehicle was $298,591.13. Records obtained from Aston Martin of Washington show the customer name as J FRANK. According to their records provided, there was a notation that "the customer" had provided a $20,000 down payment "a few months ago @ time of order". A review of J FRANK's financial records revealed an electronic payment from PNC xx7539 to "AM of Washington" for $20,000 on January 14, 2015. Records from Aston Martin of Washington also included a copy of check 120 dated June 9, 2015, in the amount of $278,591.13 written from PNC xx7539, and signed by J FRANK.

70.      As noted earlier in this affidavit, PNC xx7539 was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking a seizure warrant for this vehicle.

## 2014 TOWN & COUNTRY WAGON, VIN 2C4RC1GG0ER133104

71.      According to records obtained from the Virginia Department of Motor Vehicles, this Town & Country van was purchase on or about April 6, 2014, from Fair Oaks Chrysler Jeep Dodge in Chantilly, Virginia. The registered owner of this vehicle is Buffy Ann Frank, and the sale price is listed as $40,765. This vehicle was assigned Virginia license plate number WLV7844. A review of B FRANK's financial revealed check number 1004, written from BB&T xx7801, payable to Fair Oaks Motors in the amount of $47,028.78. Handwritten in the

memo section of the check was "Chrysler T&C for me." The check was dated April 6, 2013, however the check cleared B FRANKs account on April 11, 2014. Your affiant believes the check as inadvertently dated for the prior year based on the purchase day/month on both the check and DMV records, and cleared date from the bank. The back of the check was endorsed as follows, "...for deposit only Fair Oaks Motors, Inc T/A Fair Oaks Chrysler Jeep Dodge."

72.     This vehicle was observed in the driveway of B FRANK's current residence on St. Ives Place, Wilmington, NC, on the afternoon of May 11, 2017. As noted earlier in this affidavit, PNC xx7801 was primarily funded with fraudulent proceeds. Therefore, your affiant is seeking a seizure warrant for this vehicle.

## CONCLUSION

73.     Based on the information contained in this affidavit, there is probable cause to believe that the Subject Property constitutes or was derived from proceeds traceable to the wire fraud scheme and is therefore subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984; and subject to criminal forfeiture pursuant to 28 U.S.C. § 2461(c) .

74.     Thus, your affiant requests that the Court issue seizure warrants allowing law enforcement agents with the Federal Bureau of Investigation to seize the Subject Property.

_____
Michelle L. Rankin, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this ___16th___ day of May, 2017.


_____ /s/ _____
John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

26